## Missouri, Kansas & Texas Railway Company of Texas v. J. M. Chambers.

Delivered December 31, 1897.

**1. Verdict—Personal Injuries—Damages—Amount Not Excessive.**

A verdict for $11,500 is not excessive for an injury to a brakeman 27 years old, earning from $60 to $75 per month, by which his health has been permanently impaired, he has suffered much physical and mental pain, and has probably been rendered unable to earn a living for the remainder of his life.

**2. Railroad—Inspection of Cars—Negligence Vel Non.**

A railroad company is not, as matter of law, free from negligence towards its brakeman in failing to inspect on the inside a car received from another company, although such car was sealed, where a reasonable inspection of the car from the outside would have shown signs of a defect in the ladder on the side of the car, and an inspection from the inside was required to see whether or not it was actually safe.

**3. Master and Servant—Risks Incident to Employment—Brakeman.**

A railroad brakeman does not assume the risks incident to the negligent inspection of cars, even though he may know that such is the manner of inspection.

**4. Charge of Court—Assumption of Fact—Harmless Error.**

A portion of a charge is not objectionable as assuming a fact when, considered in connection with another portion of the charge, it clearly left the fact for the determination of the jury.

**5. Railroad—Accident to Brakeman—Contributory Negligence.**

A brakeman is not, as matter of law, guilty of contributory negligence in failing to discover a defect in a ladder on a freight car used by him at night, although such defect is so obvious that it would have been discovered by an inspector if a proper inspection had been made.

APPEAL from Grayson. Tried below before Hon. Don A. Bliss.

*T. S. Miller* and *Head, Dillard & Muse*, for appellant.—1. The charge was erroneous in leaving it to the jury to say whether or not the exercise of ordinary care requires railway companies to break the seals and unload and inspect on the inside all cars tendered to them by connecting lines. Railway v. Dwyer, 75 Texas, 581.

2. An employe is chargeable with patent and obvious defects, whether he has actual knowledge thereof or not. It is negligence not to see an obvious or patent defect. Railway v. Conrad, 62 Texas, 627; Railway v. McCarty, 64 Texas, 632; Rodgers v. Railway, 76 Texas, 502; Wood's Mast. and Serv., 326, 335.

3. The verdict of the jury is excessive in amount, and especially is it so excessive because the evidence of the nature of the injuries and amount plaintiff was earning failed to warrant the finding of a sum so great as was found by the jury.

*C. B. Randell* and *J. W. Finley*, for appellee.—1. Whether ordinary care requires railway companies to break seals, and unload and inspect cars received from connecting lines, is a question for the jury under the facts in each case.

2. The verdict is amply supported. Appellee was 27 years of age, strong, healthy, and active, and was earning $60 to $75 per month, which

was reasonable. His disabilities are total and permanent, and his earning capacity destroyed, and expenses of $30 to $40 per month are entailed upon him in addition to his suffering.

HUNTER, Associate Justice.—This suit was filed June 30, 1896, by the appellee, to recover damages from appellant for personal injuries sustained by him on the night of June 17, 1896, while he was engaged in the performance of his duties as brakeman on one of appellant's freight trains.

He alleged that while in the performance of his duty, using ordinary care for his own safety, he was injured by reason of the pulling out, giving way and breaking of a handhold in a ladder on one of the cars in one of defendant's trains at the city of Denton, Texas; that said handhold and its fastenings were old and worn and out of repair, and that by reason thereof they gave way, pulled out, and broke, and allowed him to fall, and he was thus seriously and permanently injured; and that, if the defendant had used ordinary care to furnish for his use cars, handholds, and fastenings properly constructed, and in proper repair and reasonably safe for use, the injury would not have occurred; that the unsafe condition of said car handhold and fastenings was known to defendant, or by the use of ordinary care might have been known, and was not known to plaintiff.

The defendant denied that the injury was caused by its negligence, or by any want of ordinary care, and alleged that if there was any defect in said handhold or its fastenings, it was latent, that is, could not be discovered by the exercise of ordinary care; that said car belonged to a foreign line of railway, was loaded and sealed, and that if there was any defect in the handhold or its fastenings, it was not discoverable in the exercise of ordinary care, without unsealing the car and unloading it; that it was a general custom among railway companies, and of the defendant company, to receive foreign cars when loaded and sealed, without unsealing and unloading them, and that plaintiff knew or was chargeable with knowledge of this custom of defendant, and by remaining in defendant's employment assumed the risk of being injured by reason of any defect that might be in any such car which was not discoverable by the customary inspection made by defendant in such cases; that if defendant was mistaken as to the defects being latent or hidden, and if the same were open, then the same were patent to common observation, and plaintiff knew, or in the exercise of proper diligence might have known, of said defects, and if he failed to discover them he was guilty of contributory negligence, and hence ought not to recover.

Our statute supplies a general denial to this answer.

The cause was tried by a jury on the 20th day of March, 1897, and a verdict and judgment were rendered on that day in favor of plaintiff for $11,500, and to reverse which this appeal is prosecuted.

The record discloses, in substance, the following facts:

The appellee was, on the night of June 17, 1896, in the employment of appellant as a brakeman on a freight train which at 10:15 o'clock that

night was running southward at Denton station, and as the train approached Denton, it having orders to lie by on a sidetrack for a live stock train to pass it, it became necessary for appellee, who was on top of the train in the discharge of his duties, to go to the forward end of the train, while in motion, running at the rate of ten or twelve miles an hour, and get on the engine, so that when the switch stand was reached he could alight from the engine and throw the switch and turn the train in upon the sidetrack. In reaching the engine, it was necessary for him to descend from the top of the box car next to the engine on a ladder composed of iron rounds screwed at each end to the right hand side of the car, within two inches of the front end thereof. In descending on this ladder, and when his feet had about reached the bottom round, with his left hand holding to the second round from the top, he was swinging his right foot and hand to the rear end of the tender when the round of the ladder held in his left hand gave way, caused by the lag screw in the hind end pulling out, and the round at that end parting from the side of the car broke off the front end of the round, and appellee fell to the ground, and by the motion of the train was thrown against a switch stand, which struck him in the abdomen and seriously and permanently injured him, rendering him unable to walk without a body brace and crutches, or even to sit up without assistance. He requires constant attention and nursing, and it is probable that his injuries will remain during his life, and seriously affect his ability to labor and earn a living.

The car from which he fell did not belong to appellant, but was the property of the Chicago, Milwaukee & St. Paul Railway Company, and was attached to this train at Denison, Texas, about 6:55 p. m. of that day, consigned to El Paso, Texas, via Fort Worth. It was loaded and sealed, and had arrived at Denison from Kansas City, Missouri, at 4:40 p. m. of that day. It remained in appellant's yards at Denison two hours and fifteen minutes, and was inspected by appellant's car inspectors during that time.

The evidence of appellant's witnesses who were on duty as inspectors of cars at Denison that day tend to prove that their custom is never to break the seals of loaded cars for the purpose of inspecting them inside, and that on this day the two inspectors—one on each side of the train in question—began at the engine and walked back to the rear, viewing and looking around, over, and under the cars to see if everything was in proper and safe condition. Their evidence tends to establish that they would sometimes climb the cars and go over them, testing the brakes and ladders, but on this day they were rushed and did not go on top of or over this train. They viewed the brakes and brake rods from the ground, and in the same manner inspected the ladders. They found nothing wrong with the car in question, but did not climb its ladders nor take hold of the rounds to see if any were loose. If they had found one loose, they would either have repaired it as it stood, or set out the car and had it repaired before leaving Denison, because, they testified, it was dangerous to use a car when the rounds of the ladders are loose. They were

short of help that day, and did not make as close an inspection as they sometimes did, though the general custom at Denison was to inspect cars by sight only, and not· to climb the cars to make inspections. By climbing the ladders one could tell whether the rounds were loose, when the defect would not appear to the sight. They very often did not do this. They were shorter of men at that time than they had been. Sometimes they would fail to do any climbing, on account of being hurried with their work.

In short, we find from the undisputed evidence of appellant's own witnesses that this car was not inspected on the outside in an ordinarily careful, skillful manner, and if it had been, the defective fastenings of this round in the ladder would have been, in all reasonable probability, discovered and repaired, and the injury would not have occurred. The appellee had not previously had occasion to use the car, and did not know of the defect. The defect consisted in the screw which held the hind end of the round of the ladder being loose, caused by the wood around it becoming rotten and decayed, so that the threads of the screw had nothing binding on them to hold them fast in the wood. Appellant's evitence tends to show that the defect was discoverable from the inside of the car only.

The appellee was 27 years old, and prior to this injury was in good, sound health, sober and industrious, and was earning from $60 to $75 per month. His injuries have permanently impaired his health, inflicted upon him pain and suffering both of a physical and mental nature, and have rendered him in all probability unable to earn a living the balance of his life, or at least have greatly impaired his ability to do so. The damages sustained are not unreasonable or excessive, at the sum fixed by the jury.

The third assignment of error is as follows: "The court erred in giving the following paragraph of its charge to the jury: 'If the car the handhold on which plaintiff claims was defective was received by defendant from one of its connecting lines already loaded and under seal, the defendant would not be required to have said car unloaded or the seal broken, in order to enable it to look for defects therein, unless the exercise of ordinary care requires the defendant so to do.' Such charge being erroneous in that it leaves it to the jury to say whether or not·the exercise of ordinary care requires railway companies to break the seals and unload and inspect on the inside all cars tendered to them by connecting lines."

The evidence in this case proves that, by a reasonably proper and ordinarily careful inspection of this car on the outside, the defect which caused the injury would have been discovered, or at least such signs of defect as would have suggested to any ordinarily prudent, competent, and skillful inspector of cars the necessity of going inside of the· car to see if the fastenings were safe, and to repair them on the inside, if it could not be done from the outside. And if the fastenings were discovered ·to be loose and defective from the outside, it was the duty of the inspectors

to go inside, if necessary, and see and know that they were reasonably safe for use before the car was allowed to depart in the train, if in the performance of this duty they had to break a dozen seals and unload the entire car, or else decline to haul it at all. It does not appear that the car was loaded with perishable goods, or that there was any necessity for rushing it to its destination, and even if there was such necessity, it does appear that it lay in appellant's yards at Denison for two hours and fifteen minutes, showing ample time for a full and careful inspection.

In Baltimore v. Mackey, 157 United States, 72, Justice Harlan, in discussing the duty of the master to inspect foreign cars, quotes approvingly from the trial judge's opinion in that case the following: "It would be most unreasonable and cruel to declare that while the faithful workman may obtain compensation from a company for defective arrangement of its own cars, he would be without redress against the same company if the damaged car that occasioned the injury happened to belong to another company."

He cites the case of Gottlieb v. Railway, 100 New York, 462, and quotes approvingly from it as follows: "When cars come to it (the railway company) which have defects visible or discoverable by ordinary inspection, it must either remedy such defect or refuse to take such cars—so much at least is due to its employes. The employes can no more be said to assume the risks of such defects in foreign cars than in cars belonging to the company. The rule imposing this responsibility is not an onerous or inconvenient or impractical one. It requires, before a train starts, and while it is upon its passage, the same inspection and care as to all the cars in the train."

Continuing, Justice Harlan says: "In a later case, Goodrich v. Railway, 116 New York, 398, 401, 5 L. R. A., 750, the same principle was announced, the court saying: 'It was decided in Gottlieb v. Railway, 100 New York, 462, that a railroad company is bound to inspect the cars of another company used upon its road, just as it would inspect its own cars; that it owes this duty as master, and is responsible for the consequences of such defects as could be disclosed or discovered by ordinary inspection; that when cars come in from another road which have defects, visible or discernable by ordinary examination, it must either remedy such defects or refuse to take them. This duty of examining foreign cars must obviously be performed before such cars are placed in trains upon the defendant's road or furnished to its employes for transportation. When so furnished the employes whose duty it is to manage the trains have a right to assume that, so far as ordinary care can accomplish it, the cars are equipped with safe and suitable appliances for the discharge of their duty, and that they are not to be exposed to risk or danger through the negligence of their employer.' "

Justice Harlan then concludes the undivided opinion of the Supreme Court as follows: "We are of opinion that sound reason and public policy concur in sustaining the principle that a railroad company is under a legal duty not to expose its employes to dangers arising from such de-

fects in foreign cars as may be discoverable by reasonable inspection before such cars are admitted into its trains."

Justice Stayton, in Railway v. Carlton, 60 Texas, 403, said: "It is, however, certainly true, that the statutes of this State do not compel any railway company within this State to receive and haul a car of another road, which is so defectively constructed, or otherwise unsafe, as manifestly to imperil the life or limb of a single employe." See also Jones v. Shaw, 41 S. W. Rep., 693; Railway v. Kernan, 78 Texas, 297; 3 Elliott on Railroads, sec. 1279, note 2.

We think the court properly left it to the jury to say, under all the evidence, whether ordinary care on the part of the inspectors required them to inspect the car on the inside; and we overrule this assignment of error.

The fourth and fifth assignments of error are based upon the proposition that appellee, by accepting employment as brakeman in the freight train service of appellant, assumed the risks incident to the negligent inspection of cars, whether he knew of the careless manner in which they were inspected or not, as he thereby assumed to understand that such was the manner of inspection, and was in law chargeable with such knowledge whether he possessed the same or not. .

We can not subscribe to such a proposition as this. It is carrying the doctrine of assumed risks further than we are willing to extend it. We think that public policy would not sanction such a cruel principle in the management and operation of any business requiring experience, knowledge, and skill, and which is known to be highly dangerous—even with the most careful management—to the lives and limbs of its operatives. See Railway v. Eberhart, 43 S. W. Rep., 510.

The sixth assignment of error is as follows: "The court erred in giving to the jury the paragraph of its charge number 16, as follows: 'Again, if you believe from the evidence that said defective condition of the said handhold was of such a nature that it would be obvious, and would be seen by a servant of the company in the exercise of ordinary care when he came to use the same, then plaintiff when he came to use said handhold, in the exercise of ordinary care, would have discovered such condition before he was injured, then he could not recover.' Such charge being erroneous in that it assumes that the hand-hold which caused the injury was defective, when this was one of the contested issues in the case; and also in that notwithstanding the defects, if any may have been obvious, the jury was authorized to excuse plaintiff, if in the exercise of ordinary care he would not have discovered such obvious defect, the law being that an employe is chargeable with notice of patent and obvious defects."

Counsel for appellant make two propositions under this assignment, as follows:

(1) "An employe is chargeable with patent and obvious defects, whether he has knowledge thereof or not. It is negligence not to see an obvious or patent defect."

(2) "The charge complained of assumes that the hand-hold was in a defective condition, and is upon the weight of the evidence."

As to the second proposition, the court had in the tenth paragraph of its charge submitted the facts plead by the plaintiff as constituting the defect and the negligence of the master in respect thereto, and charged them as follows: "If you believe further from the evidence that the fastenings of said hand-hold were worn, out of repair, and not reasonably safe for use, and if you believe further from the evidence that the said condition of said hand-hold and its fastenings was known to the defendant before the time of said inujry, or ought to have been known to it in the exercise of ordinary care before said time, and if you believe further from the evidence that plaintiff would not have received his said injury if defendant had exercised ordinary care, and if you believe further from the evidence that plaintiff himself at the time was using ordinary care for his own safety, you will find for the plaintiff."

This paragraph of the charge, taken in connection with the eleventh and twelfth paragraphs, we think clearly left it to the jury to say whether the car was defective, and we are inclined to think that the error here complained of in the second proposition did the appellant no harm.

As to the alleged error pointed out by the first proposition, the charge in this paragraph, as well as in several others, fully and clearly informed the jury that if the defect was obvious, then the plaintiff could not recover, and defines "obvious defect" to be a defect which one, by the exercise of ordinary care, would discover. We think this definition is correct, as applied both to the master and to the servant in the operation of freight trains; but ordinary care on the part of competent inspectors of cars, whose duty it is to hunt for defects, and who are presumed to be skilled in detecting and finding them, may and does mean a great deal more than when applied to a brakeman who, if he faithfully serves his master in the particular line for which he was employed, may have no time to look for defects, but has the legal right to assume that the master will have competent and skillful inspectors to look after that department of the business, and furnish him reasonably safe appliances to use in the performance of his duties as brakeman.

Besides, it was 10 o'clock at night when this injury occurred, and at a time when such a defect would probably not be seen by the brakeman; but it was daylight when the inspectors did their work of inspecting this car, and with the exercise of ordinary care in the performance of their peculiar duty they should have discovered it, and to them, therefore, it was obvious, while under the circumstances it was not so to the plaintiff. It was their duty, in the exercise of ordinary care, to inspect the ladder, and every round of it, because they knew that if one round was loose, and should pull out and break off while the brakeman was on it, it would most probably cause his injury or death; and if they had thus inspected the ladder, the evidence of its condition shows that they would have discovered the defect that caused the injury. While, on the other hand, the faithful brakeman, with his whole mind fixed on his particular duties,

and on how to perform them in the most efficient manner, and with the least delay to his master's train, had no time to inspect the ladder before he leaped upon it and swung off in the dark of the night in his rapid course to do his master's work in the manner required of him. In such a case the defect would have to be quite obvious, before the writer would require him to discover it or charge him with knowledge thereof.

The seventh and eighth assignments of error, in our opinion, are not well taken.

The ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth assignments of error complain of the court's action in admitting and excluding evidence, and are all overruled, as containing no merit.

And we also overrule the fifteenth assignment, which complains that the verdict was excessive, and the sixteenth, complaining that the verdict was contrary to the evidence in the certain particulars therein named, as what we have said answers fully, we think, the points of objection to the verdict here insisted upon.

We find no error in the judgment, and order that it be in all things affirmed.

*Affirmed.*

Writ of error refused.