MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. SAM HARRIS.

Decided March 16, 1907.

**1.—Foreign Cars—Duty of Inspection.**

A railroad company is bound to inspect the cars of another company used upon its road just as it would inspect its own cars.

**2.—Defective Handhold—Knowledge—Circumstantial Evidence.**

In a suit for personal injuries caused by the giving way of a handhold on a freight car, circumstantial evidence considered, and held sufficient to support a finding by the jury that defendant knew of the defective condition of said handhold notwithstanding the testimony of its inspectors that they did not discover the same.

**3.—Verdict not Excessive.**

A verdict for $15,000 in the case of an employe whose left foot was amputated about four inches above the ankle, who lost much blood, suffered great and continuous pain, was 23 years of age, with a life expectancy of 40 years, was earning $75 per month, was not able to work after the injury, was illiterate and had no knowledge of any other business, could not be said on appeal to be excessive.

Appeal from the District Court of Hill County. Tried below before Hon. W. C. Wear.

*T. S. Miller* and *Ramsey & Odell,* for appellant.—A railway company is not responsible to its employes for latent defects which could not be discovered by such an inspection as the exigencies of traffic will permit, in the exercise of reasonable care. This rule is applicable to the facts of this case, and a charge in terms instructing the jury that the same duty rested on the appellant in respect to this foreign car, in the matter of inspection, as was required in respect to its own cars was both erroneous and hurtful. Ballou v. Chicago, etc., R. R. Co., 54 Wis., 257, 41 Am. Rep., 31; Louisville, etc., Ry. Co. v. Bates, 146 Ind., 464, 45 N. E. Rep., 108; Gutridge v. Missouri Pac. Ry. Co., 94 Mo., 468, 7 S. W. Rep., 476; Baldwin v. Chicago, R. I. & P. Ry. Co., 50 Iowa, 680.

The evidence distinctly raised the issue that the handhold and the wood to which same was attached were carefully examined by appellant's inspectors a very short time before the accident occurred, and that they were both apparently in safe and sound condition, and that there was nothing in the appearance of the wood to indicate that same was rotten, unsound or otherwise in bad condition, and in this condition of the testimony it was the right of appellant to have the jury instructed that it was not required to repeat the tests which were proper to be used in the original construction of said car, but was entitled to assume that all parts of this car which appeared from such inspection as would have been given by a reasonably prudent person to be in good condition, were in fact in such condition, and that if the company used such care in the inspection of said car and such defects were not discovered they would find for it. 4 Thompson on Negligence, 493; Ballou v. Chicago, etc., Ry. Co., 54 Wis., 257, 41 Am. Rep., 31.

The court erred in refusing to give and in not giving in charge to the jury special charge number 9, requested by counsel for defendant. The special charge referred to is as follows: "Even if you should find from the evidence that the handhold in question or the wood to which it was fastened was defective, and that such defect was the proximate cause of the injury to the plaintiff, if such defect was latent and such as could not have been discovered or ascertained by the use of ordinary care in the inspection of said car, you will find for the defendant." Fordyce v. Yarbrough, 1 Texas Civ. App., 265; Quintana v. Consolidated Smelting Co., 14 Texas Civ. App., 347; Galveston, etc., Ry. Co. v. Buch, 65 S. W. Rep., 681.

There was no evidence that the defendant knew that the wood to which the handhold was attached was rotten and decayed and would not hold the bolts or screws or fastenings with which said handhold was attached to the wood, and the submission of said matter to the jury as a controverted issue was erroneous and prejudicial to the appellant. Galveston, H. & S. A. Ry. Co. v. Parish, 15 Texas Ct. Rep., 334; Houston & T. C. Ry. Co. v. Rider, 62 Texas, 270; Houston & T. C. Ry. Co. v. Gilmore, 62 Texas, 391; Gulf, C. & S. F. Ry. Co. v. Johnson, 91 Texas, 573; Texas & N. O. Ry. Co. v. Crowder, 63 Texas, 505; Texas & P. Ry. Co. v. Wisenor, 66 Texas, 675; Missouri Pac. Ry. Co. v. Platzer, 73 Texas, 124; Gulf, C. & S. F. Ry. Co. v. Harriett, 80 Texas, 73; Galveston, H. & S. A. Ry. Co. v. Arispe, 81 Texas, 517; Texas & P. Ry. Co. v. French, 86 Texas, 96; Galveston, H. & S. A. Ry. Co. v. Waldo, 26 S. W. Rep., 1004; St. Louis S. W. Ry. Co. v. Rice, 29 S. W.

Rep., 525; Gulf, C. & S. F. Ry. Co. v. Cunningham, 30 S. W. Rep., 367; Texas & P. Ry. Co. v. Avery, 33 S. W. Rep., 704; Texas & P. Ry. Co. v. Birchfield, 33 S. W. Rep., 1022; Houston, E. & W. T. Ry. Co. v. Powell, 41 S. W. Rep., 696; Gaines v. Hindman, 74 S. W. Rep., 583.

A railway company receiving a foreign car for transportation over its lines it is not required to repeat the tests which are proper to be used in the original construction of the car, but is entitled to assume that all parts of the car which appear from such inspection as would be given by a reasonably prudent person to be in good condition, are in fact in such condition. Ballou v. Chicago, M. & S. P. Ry. Co., 54 Wis., 262, 11 N. W. Rep., 559; Louisville, N. A. & C. Ry. Co. v. Bates, 146 Ind., 564, 45 N. E. Rep., 108; Baldwin v. Chicago, R. I. & P. Ry. Co., 50 Iowa, 680; 1 Labatt on Master and Servant, p. 380; 4 Thompson on Negligence (2d. ed.), p. 493; Bailey's Masters Liability for Injuries to Servants, p. 105.

A judgment for $15,000 for the loss of the left foot of a brakeman, 23 years of age, earning an average of about $75 a month, is excessive. International & G. N. Ry. Co. v. Brice, 95 S. W. Rep., 660; Texas & Ft. S. Ry. Co. v. Hartnett, 75 S. W. Rep., 809.

*Morrow & Smithdeal,* for appellee.

BOOKHOUT, Associate Justice.—This was a suit by appellee Sam Harris, in the District Court of Hill County, Texas, against appellant, the Missouri, Kansas & Texas Railway Company of Texas, filed on February 7, 1906, for damages in the sum of $50,000, alleging in substance that appellee's leg had been run over and crushed, necessitating an amputation thereof, by reason of a defective handhold on a car in one of appellant's trains, and that appellant was negligent in furnishing said car in such a dangerous and defective condition, and also negligent in failing to make proper inspection of said car.

Appellant answered by general denial and special answer to the effect, in substance, that if there was any defects in said car or the handholds and fastenings thereof they were not known to it and could not have been known or ascertained by the exercise of ordinary care. That the car which caused the accident and injury belonged to another and different railway company and had been in possession of appellant only a few days. That appellant was not familiar with or advised as to the nature of the original construction of said car, or any defects therein; that said car, the handholds and fastenings and other work in and about same, were apparently in good and proper condition and that any defect therein was a latent one and such as could not have been discovered by any reasonable care on its part. It also alleged due and proper inspection and that the car, handholds, fastenings, etc., appeared to be in good and safe condition. There was also a general plea of assumed risk.

The case was tried at the March term, 1906, of the District Court of Hill County, and resulted in a verdict and judgment in favor of appellee for the sum of $15,000. Defendant appealed.

The appellant groupes its first, second and third assignments of error and presents various propositions thereunder, which in different form raise the contention that there is no absolute duty resting on a railway

company to inspect cars received from a connecting carrier, but that the company sought to be charged should exercise ordinary care to make such inspection to see that the cars are reasonably safe for use. It is further contended that it was not in law held to the same duty in the inspection of cars belonging to other companies tendered it for transportation as it is in the inspection of its own cars. Two special charges were requested by defendant and refused by the court substantially in line with appellant's contention. The particular paragraph of the court's charge to which the complaint is directed reads: "The plaintiff, Sam Harris, had a right to presume that the defendant had exercised ordinary care to furnish a reasonable safe handhold for its use in the manner and for the purposes for which it had been provided, and he was not required to inspect said handhold before using it. And in this connection you are charged that it was the duty of the defendant, the Missouri, Kansas and Texas Railway Company of Texas, to inspect the car in question, though it may have belonged to another company, just as it would inspect its own cars, and the defendant in law would be held responsible for the consequences of such defects, if any existed, as could be disclosed or discovered by such inspection as an ordinary prudent person would have made under the same circumstances."

The appellee was a brakeman on the appellant's railroad. He was at work on the train belonging to the appellant which was made up at Hillsboro, at about ten o'clock in the morning of the 4th day of December, 1905. In the train, which consisted of 32 or 33 cars, was a car marked, Missouri Pacific, No. 27465. The car mentioned came to the South Yards at Hillsboro at 4:15 o'clock on the morning of December 4, 1905. There was on duty in the said yards two inspectors. They inspected the running gear of the train, but made no inspection of the top of the cars. These two inspectors went off duty at 7 o'clock on that morning, and two others took their places at that time and made no inspection whatever of the train. The car was sent out of Hillsboro on local freight between 9 and 11 o'clock on the morning of December 4, 1905. When the train reached Abbott, about 10 miles from Hillsboro, the appellee in the discharge of his duty undertook to climb the ladder on the car mentioned above, and the top round or handhold gave away and he fell and his foot was run over by the train. The conductor in charge of the train testified that he examined the car after the appellee was injured, and that the top round or handhold of the ladder was pulled off at one end and the other end still fastened to the car, that the handhold had pulled loose from the timber, that the screws had pulled out, that the wood was old and rotten, that the car was an old car, that the wood to which the grab iron had been fastened was decayed; that it was not crumbled to dirt, but there was only one evidence of sound wood in the piece of plank that pulled off with it and that was a little splinter that came off with it. "The rest was broke or rotten, and what persons would ordinarily say was a rotten piece of wood." Johnson, one of the inspectors at Hillsboro, testified that an inspector was supposed to give the cars upon their arrival in the yards an inspection as to the wheels and running gear and all safety appliances, and handholds and ladders, irons, running bars and lift rods, and cars and all such things as are

liable to cause any damage to any employe or to cause any breakdown or wreck on the road. That the usual way of inspecting handholds was to go over the top after looking over the running gear and on the ground and seeing all a man can over from the ground, and then go over the top of the train especially of box cars and if the handholds timber to which the handholds are fastened looks suspicious or if it is decayed or something of that kind or the bolts and screws that they were fastened on with, looked suspicious he would naturally go and pull on the handhold or walk up to it and kick it to see whether or not it was safe, sufficient to hold a man's weight.

T. A. Jones, an inspector for the appellant, testified that he inspected car, Missouri Pacific No. 27465, at Greenville on December 3, that the inspection was made in the daytime. There were three other inspectors and helpers at Greenville, neither of these was used as a witness. The inspector further testified that he did not know when the car reached Greenville. That he had no recollection at all of the car, independent of the memorandum, that he had made, and that it was his duty to inspect all cars that came through on his shift. There was evidence that the car was received by appellant at Shreveport. The evidence does not show any inspection by defendant when it received the car.

It was the duty of the defendant, as stated in the paragraph of the charge complained of, to use ordinary care to furnish a reasonably safe handhold for plaintiff's use in the performance of his duties as brakeman, and plaintiff had the right to presume defendant had performed its duty in this respect. It was also the duty of the defendant to make inspection of cars furnished by it to its employes for transportation. As to its responsibility for defects in cars of another company drawn over its road the Court of Appeals of New York states the law thus: "It is not bound to take such cars if they are known to be defective and unsafe. Even if it is not bound to make tests to discover secret defects, and is not responsible for such defects, it is bound to inspect foreign cars just as it would inspect its own cars. It owes the duty of inspection as master, and is at least responsible for the consequences of such defects as would be disclosed or discovered by ordinary inspection. When cars come to it which have defects visible or discoverable by ordinary inspection, it must either remedy such defects or refuse to take such cars; so much, at least, is due from it to its employes. The employes can no more be said to assume the risks of such defects in foreign cars than in cars belonging to the company. As to such defects the duty of the company is the same as to all cars drawn over its road. The rule imposing this responsibility is not an onerous or inconvenient or impracticable one. It requires before a train starts and while it is upon its passage the same inspection and care as to all the cars in the train." (Gottlieb v. New York, L. E. & W. Ry. Co., 100 N. Y., 469.)

Again, it was said by the same learned court in Goodrich v. New York Cent. & H. R. Ry. Co., 116 N. Y., 398: "that a railroad company is bound to inspect the cars of another company used upon its road, just as it would inspect its own cars. That it owes this duty as master, and is responsible for the consequences of such defects as would be disclosed or discovered by ordinary inspection. That when cars come to it from another road which have defects, visible or discernible by ordinary ex-

amination, it must either remedy such defects or refuse to take them. This duty of examining foreign cars must obviously be performed before such cars are placed in trains upon the defendant's road or furnished to its employes for transportation. When so furnished, the employes whose duty it is to manage the trains have a right to assume that, so far as ordinary care can accomplish it, the cars are equipped with safe and suitable appliances for the discharge of their duty, and that they are not to be exposed to risk or danger through the negligence of their employer."

The principle as announced by the Court of Appeals of New York is recognized as the correct rule by the Supreme Court of the United States in Baltimore & P. R. Co. v. Mackey, 157 U. S., 72, and by the Supreme Court of this State in International & G. N. Ry. Co. v. Kernan, 78 Texas, 294.

The court, in the main charge, further instructed the jury in the fifth paragraph as follows: "If you find from the testimony that the defendant's inspectors previous to said accident inspected said car to which said handhold was fastened, and you further find that in making said inspection of said car said inspectors used ordinary care and diligence to ascertain whether said handhold was reasonably safe for the purpose for which it was being used, and failed to discover that said handhold was not securely fastened, if you find that it was insecurely fastened, then you are charged that the accident which it is claimed caused Sam Harris' injury, if he was injured, was one of the risks ordinarily incident to his employment, and in such an event you should find for the defendant."

At the request of the appellant the court gave two requested charges, numbers 8 and 10, reading:

"8. You are instructed that no duty rested upon the defendant company to furnish absolutely safe cars and handholds to its employes, but its duty in this respect was limited solely and only to the exercise of ordinary care in inspection and repair, that is, such care as a person of ordinary prudence would exercise under the same or similar circumstances; and if you believe from the evidence that the defendant did use ordinary care to inspect said car and handhold and failed to find any defect in same which was the proximate cause of the injury to plaintiff, the defendant would not be liable even though said car or handhold were defective and such defect was the proximate cause of the injury to the plaintiff."

"10. If you should believe from the evidence that the car and handhold in question were not inspected at Hillsboro, and that the defendant company was negligent in not making such inspection; but should further believe from the evidence that the defect in the handhold of car in question was of a latent character and such as could not and would not have been discovered by such an inspection of said car as would have been made by a reasonable prudent person under the same or similar circumstances, then and in such event you will find for the defendant, even though you may believe that the plaintiff was injured by reason of said car and handhold."

The main charge and the special charges given by the court at the request of defendant fairly submitted the law defining the duty of ap-

pellant as to the inspection of foreign cars received by it for transportation over its road, and assignments one, two and three are overruled. These remarks apply also to assignments four, five, six, seven and eight, and they are overruled.

The court in the second paragraph of the charge instructed the jury as follows: "Now if you believe from a preponderance of the evidence that on or about the 4th day of December, 1905, the plaintiff, Sam Harris, was in the discharge of his duties as a brakeman for the defendant, the Missouri, Kansas & Texas Railway Company of Texas, upon one of defendant's freight trains, and that while so in the discharge of his duties as said brakeman it became necessary to, and you believe from a preponderance of the evidence that he did, attempt to mount one of the box cars in said train by using the handhold on the side and the top of said box car, and that in so doing he exercised reasonable care and caution for his own safety, and that in so ascending said car he grasped the handhold on the top thereof and attempted to draw himself up thereby and that to do so was necessary and proper in the discharge of his duties as brakeman, and that said handhold on the top of said car that he so grasped pulled out from its fastenings and broke and gave way and that one end thereof pulled aloose from its fastenings, and that the same broke and gave away and pulled aloose from its fastenings on account of the fact that the wood to which said handhold was fastened was rotten and decayed and would not hold the bolts or screws or fastenings with which said handhold was attached to the wood, and that the defendant knew of such condition, if defective, or, by the exercise of ordinary care it could have known of the same, and that the furnishing by defendant for plaintiff's use such handhold, if you believe the same was defective, was negligence, and that such negligence, if any, was the proximate cause of the plaintiff's injuries, if any, you will find for the plaintiff, unless you find for the defendant on other issues submitted to you." This charge is assailed as erroneous in that there was no evidence that the defendant had any knowledge of the fact that the wood to which said handhold was attached was rotten and decayed, and that the charge submitted an issue not raised by the evidence. There was no direct evidence that the appellant had knowledge that the wood to which the handhold was attached was rotten and decayed. There was evidence to the effect that the car was inspected by one of appellant's inspectors at Greenville and again at Dallas. These inspectors testified that they discovered no defect in the handhold. T. H. Webb, the head brakeman, testified that he examined the car after plaintiff was hurt to ascertain the cause of the accident. He climbed upon the top of the car and discovered that the handhold had pulled loose from the timber to which it had been fastened; that the iron was not broken but that the screws holding the grabiron were badly rusted. The wood to which the handhold or grabiron had been fastened was old, rotten and decayed and the car was an old car; that there was only one evidence of sound wood in the piece of plank that pulled off with the handhold, that was one little splinter that slivered when it pulled loose, the rest was broken or rotten and what persons would call a rotten piece of wood. Eakin, appellant's inspector, who testified to having inspected the car at Dallas. stated that the class of cars to which this car belonged was an

old class and that the car had been in use a long time. He was asked this question: "State whether or not the inspection you made of this wood was particularly full and careful enough to enable you to see whether or not the wood was apparently safe and sound and in good condition?" He answers, "Yes." It was shown that appellee is a small man and before the injury weighed 130 pounds. The evidence was sufficient to raise the issue that appellant did have notice of the defect in the car and the wood to which the handhold was attached, although the witness further testified that he did not know of the defect. The inspector knew that the car had been in use a long time. His inspection, he says, was particularly full and careful enough to see that the wood was apparently safe and sound and in good condition. The undisputed evidence is that the wood to which the handhold was attached, as disclosed by the plank that pulled off with the handhold, was old, rotten and decayed. Appellee was ascending the ladder on the side and near the front end of the car and seized the handhold on top of the car with one hand when it pulled loose at one end and he was precipitated to the ground and injured. It would seem that he had not put his whole weight on the handhold, nor was he making a direct pull; yet under these conditions the handhold pulled loose while being used by a man weighing only 130 pounds. It would seem from these facts that the true condition of the handhold and its fastenings should have been discovered and revealed upon inspection. Mr. Labatt, in his valuable work on Master and Servant, states the law thus: "Knowledge may be established by showing actual cognizance of the defect, or knowledge imputed from the opportunities for actual knowledge arising from the duty to observe its machinery and appliances for the safety of its workmen." (Labatt, Master and Servant, vol. 1, sec. 125; Texas & Pac. Ry. v. Wisenor, 66 Texas, 674.) The jury were the judges of the credibility of the witnesses and the weight to be given to their testimony. They were not obliged to receive the statement of the witness that he did not discover the defect in the handhold as true, if under all the facts and circumstances they were satisfied it was not true. (Brown v. Griffin, 71 Texas, 659; Cheatham v. Riddle, 12 Texas, 112; Coats v. Elliott, 23 Texas, 613; Stitzle v. Evans, 74 Texas, 600.)

Appellant cites the case of Railway v. Parish, 15 Texas Court Reporter, 334, as sustaining its contention. We are of the opinion that the case before us is clearly distinguishable from the case cited on the facts. The defect in the case cited was in a stirrup attached to a box car. The particular defect was the absence of a nut from the bolt that held the stirrup to the car. There had been an inspection of the car at Glidden, but it did not disclose the absence of the nut. It could have come off after the inspection. If the nut came off after the inspection of the car then there was no contention that the company had notice of the defect. In this condition of the evidence it was held that there was no evidence to raise the issue that the company had notice of the defect. In the instant case the car was inspected both at Greenville and Dallas by inspectors shown by the evidence to be competent and skillful in their line. The jury could believe their testimony that such inspection was made and disbelieve the part that says they did not discover the defect in the handhold. See authorities above cited. Also,

Galveston, H. & S. A. Ry. v. Murray, 99 S. W. Rep., 150. It is clear from the nature of the defect in the handhold it could not have arisen after inspection and while the car was being transported from Greenville and Dallas to Hillsboro.

The eleventh and twelfth assignments assail the fifth paragraph of the court's charge as being upon the weight of evidence and that the same instructs the jury, in effect, that they could find for defendant only in the event the appellant's inspectors had inspected the car to which the handhold was fastened and in making said inspection used ordinary care; and as there was no contention that such inspection had been made at Hillsboro, the last inspection point through which said car had passed before the accident, said charge was prejudicial to defendant. The fifth paragraph of the charge is set out above. The evidence of the appellant showed an inspection of the car at Greenville and again at Dallas. It was agreed that there was no inspection of the handhold at Hillsboro. Under the evidence there was no error in submitting the issue as to whether the inspection of this car was such as would have been made by a person of ordinary care. The court having instructed the jury, at the request of appellant, that if they should believe from the evidence that the car was not inspected at Hillsboro; and should further believe that the defect was of a latent character, and would not have been disclosed by such inspection as would have been made by a reasonably prudent person, to find for the defendant, the jury must have understood that the issue to be determined by them was as to whether the defendant had used ordinary care in inspecting the car.

Is the verdict excessive? The evidence shows that at the time appellee was injured he was twenty-three years of age. That as a result of his injury appellee suffered great loss of blood. That he has suffered from the injury ever since it occurred; that his left leg was amputated about four inches above the ankle; that he was confined to his room as a result of the injuries for seven weeks; that his leg has not healed up yet; that it hurts him all the time; that it hurts distressingly at night, wakens him, and when he wakes up it prevents him from going to sleep again. That he has had to have it lanced once since leaving the sanitarium to let the blood out; that in falling, at the time he lost his leg, he struck the side of the car or something, and bruised his back and hip, and that hurt all the time he was in the sanitarium; that he has not been able to do any work since his injury; that previous to being injured he was earning $75 per month; that he has no knowledge of any other business; that he has not much education; that at the time of his injury his standing was good with the company. The evidence further shows that appellee expended $230 for professional services in connection with the amputation of his leg. The life expectancy of the plaintiff at the time he was injured was 40 1-100 years. In view of the evidence we are not prepared to say the verdict is excessive.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.