## STANDARD FINANCE CORPORATION v. MOORE.
### No. 9922.

Court of Civil Appeals of Texas. Galveston.

Feb. 9, 1934.

Rehearing Denied March 8, 1934.

W. H. Dunlay, of Houston, for plaintiff in error.

A. T. Carleton, of Houston, for defendant in error.

LANE, Justice.

This suit was brought by I. S. Moore against Standard Finance Corporation, hereinafter for convenience referred to as the finance corporation and as defendant.

Plaintiff alleged that he borrowed $60 from the finance corporation on the 21st day of November, 1931, and to secure repayment thereof he gave a lien to said corporation on a certain automobile; that by the instrument evidencing the money borrowed and the lien, it was sought to obligate plaintiff to pay to defendant four installments of $19.75 each, a total of $79; that the first installment was to become due one month after its date, and the others, one each on the same date of each succeeding month thereafter; that the plaintiff was allowed to keep possession of said automobile; that by said instrument executed by plaintiff it is provided, among other things, that in case default be made in the payment of said debt after maturity, then the mortgagee shall have the right to declare the whole indebtedness due and payable, and the mortgagee is authorized to enter upon the premises where the property is found and take the same by process of law or otherwise, and sell the same either at public or private sale, with or without notice, and out of the proceeds of such sale to pay such debt, expenses, and cost as may accrue by reason of such sale, the balance, if any, to be paid to the mortgagor.

Plaintiff alleges that when the second installment became due, the plaintiff was confined to his bed by sickness and that by reason thereof was unable to pay said second installment; that defendant was informed of his illness and was told by plaintiff's wife that plaintiff was unable to go to defendant's office to make arrangement for payment of the installment then due; that in a few days after such information was given to defendant, one Greer, an agent of defendant, came to the place where plaintiff was then living and inquired as to when plaintiff would pay the money then due; that plaintiff told said agent that he had lost his home by fire upon which he had a policy of insurance and that as soon as he got payment on his insurance policy he would pay the debt; that defendant's agent in a few days thereafter came and told plaintiff, who was still sick, that the bank had required his company to take possession of the car and store it in a fireproof warehouse; that he told said agent that he did not want to give up the car; that the agent then told him that his company did not want any trouble about the matter and as-

sured plaintiff that the car would be stored in the warehouse and kept for him until he could get his insurance adjusted; that the car would be ready for plaintiff when he should call for it.; that by reason of such promises made to him by said agent, plaintiff allowed the agent to take the car; that in a short while after his car was taken he collected $2,000 and went to defendant's office to pay off his indebtedness to it; and that he was told that the car had been sold to pay the debt. He alleges that the car was obtained by defendant by false and fraudulent acts and representations which were done and made in violation of plaintiff's rights, to his actual damage in the sum of $250, same being the value of the car taken and wrongfully sold. Substantially the plaintiff alleges that defendant got possession of the car by false and fraudulent representations and sold the same in utter disregard of his rights.

He alleges that the contract is usurious, in that it undertakes by its terms to obligate plaintiff to pay defendant interest in excess of that allowed by law. That the actual amount of money that plaintiff received from the defendant was the sum of $60, yet he was required and compelled to sign said instrument providing for the payment of $79 in four months time, the interest in excess of the highest rate allowed by law amounting to the sum of $15 as the interest on said sum of $60 at the highest rate would have amounted to $4.

Plaintiff prayed for the recovery of $250 actual damages, $250 as exemplary damages, and for $38, same being the double amount of the interest provided for in the usurious contract.

Defendant answered by general denial and specially alleged that under the terms and provisions of the mortgage mentioned in plaintiff's petition it was authorized by the plaintiff to take the automobile and sell it either at public or private sale, with or without notice, etc.; that it relies on all the provisions of said mortgage as a defense to show that the car was not unlawfully taken or converted by defendant, but that it was lawfully taken and disposed of by defendant in pursuance of the terms and provisions of said mortgage; that plaintiff was, at the time the car was taken, in default in the payment of one of the installments of the note secured by the mortgage and had otherwise defaulted in the terms and provisions of said mortgage and note; and that by reason of such default defendant took said automobile and disposed of it under authority of the terms of the mort-

gage. Defendant specially denied the plaintiff's allegation of usury.

In the alternative, defendant pleaded that if it be held that defendant unlawfully took and disposed of the automobile, which is denied, defendant says that plaintiff is indebted to it as evidenced by his promissory note and it pleads same as a set-off to any recovery which might be awarded to the plaintiff.

The cause was tried before a jury on special issues, in answer to which they found: First, that at the time the plaintiff surrendered his automobile to defendant, February 4, 1932, the defendant promised and agreed with plaintiff to hold it for him and that it would not sell the same; second, that the cash market value of plaintiff's automobile at the time it was disposed of by defendant was $190; third, that defendant disposed of the automobile with fraudulent, malicious, and willful intent to deprive the plaintiff thereof; and fourth, that plaintiff is entitled to $250 compensation for such fraudulent, malicious, and willful disposition of his automobile.

Upon the findings of the jury and the evidence the court rendered judgment in favor of the plaintiff against the defendant for the sum of $148.75 actual damages, and for $250 exemplary damages. Such judgment contains the following recitals:

"The court finds as a matter of fact that defendant's agent, Greer, was specially authorized by defendant to obtain possession of the plaintiff's car, and that acting under such authority, he did obtain possession of same under agreement as found by the jury in answer to Special Issue No. 1, and that defendant so authorized the taking of said car, and did thereafter dispose of the car under the facts as found by the jury in answer to Special Issue No. 3; that the Court finds as a matter of law that the defendant is liable to the plaintiff for the sum of exemplary damages as found by the jury in answer to Special Issue No. 4.

"That the Court further finds as a matter of fact and of law that the note given by plaintiff to defendant was usurious, and that the payment of $19.75 admittedly made by the defendant should be credited only as to the valid portion of the loan, viz., the $60.00 actually received, therefore leaving a balance of $41.25 that plaintiff has received of defendant's money on said car, and that this sum should be deducted from the $190.00 found by the jury in answer to Special Issue No. 2, as the value of the car, leaving a bal-

460

ance of $148.75 that plaintiff should recover from the defendant as his actual damages, and that the chattel mortgage and note should be cancelled."

The Standard Finance Corporation has appealed.

■ Appellant contends that the judgment was erroneously rendered against it, in that under no view of the pleadings and evidence is the appellee entitled to such judgment; that the plaintiff's petition and the undisputed evidence fail to show that plaintiff's automobile was unlawfully taken, converted, and sold, but, on the contrary, show that same was lawfully taken and sold by the defendant under the terms of the chattel mortgage executed by the plaintiff authorizing and empowering the defendant to do so, the plaintiff's petition and the undisputed evidence showing that there was no consideration for any alleged promise and agreement by the defendant that it would hold said automobile for the plaintiff and would not sell the same.

We overrule appellant's contention. After a careful consideration of the pleadings and the evidence, we have reached the conclusion that they are sufficient to support the findings of the jury and of the court and the judgment rendered.

Appellee Moore testified that appellant's agent, Greer, told him that the bank required payment of the installment due or the taking of the car and having it put in a garage, and that he, Moore, agreed to deliver the car for such purpose, with the understanding that it would be held for him until he could get out of his bed and could see about the collection of certain insurance money due him, and that before he let said agent take the car he made the agent give him a receipt therefor; that he would not have surrendered the possession of the car if he had thought defendant was getting possession to sell it under the mortgage.

The wife of appellee testified that when the second installment fell due she informed the appellant company that appellee's house had been destroyed by fire and that her husband, appellee, was sick in bed. She substantiated the testimony of her husband to the effect that appellant's agent, as a means to get possession of the car, told him that he would store the car and hold it for him until he was able to get up.

Greer, the agent who got the car from appellee, testified: "I told Mr. Moore that I could not go on any longer with the account delinquent"; that he told appellee that if he would let him take the car and store it they would hold it for a few days.

L. M. Canton testified that he bought the car from appellant, for which he paid $59; that he held it a week and sold it to a Mr. Gordon; that the Standard Finance Corporation, appellant, turned the car over to his company, the Atlas Finance Corporation, directly after it got it from Mr. Moore; they sold it to the Atlas Finance Corporation on the 11th day of February.

A. E. Suvervielly, vice president of the Standard Finance Corporation, testified that he told Greer to go to see Mr. Moore and tell him that they had to bring the matter to some conclusion; that the automobile was obtained by Greer and it was turned over to the Atlas Finance Corporation, which corporation was owned by himself and Mr. Josey, who also owned the Standard Finance Corporation; that he knew that Moore had been told by Greer that the car would be held for a few days; and that as Moore did not come down to see about the car they assumed that he did not want it.

■ The mortgage and notes disclose the fact that usurious interest was charged as found by the court.

The judgment is in all things affirmed.

Affirmed.