## FREE v. SMITH.

### No. 4553.

Court of Civil Appeals of Texas. Texarkana.
Feb. 19, 1935.

Rehearing Denied March 7, 1935.

C. E. Florence and Edwin M. Fulton, both of Gilmer, for plaintiff in error.

Hill & Greer, of Mission, and G. L. Florence, of Gilmer, for defendant in error.

JOHNSON, Chief Justice.

H. E. Smith and the Houston National Bank filed this suit against J. W. Free and wife, Ida Free. Before trial of the case the Houston National Bank transferred its interest in the suit to its coplaintiff, H. E. Smith. By reason of her coverture Mrs. Ida Free was dismissed from the suit, leaving only H. E. Smith as plaintiff and J. W. Free as defendant.

Plaintiff's suit was to recover of defendant upon two promissory notes dated September 24, 1931, signed by defendant and his wife, payable to the order of C. J. Vollmer, each in the principal sum of $2,000, bearing 6 per cent. interest from date, providing for 10 per cent. attorney's fee, and due sixty and ninety days, respectively, after date. The notes are indorsed in blank by C. J. Vollmer, J. W. Hope, and H. E. Smith.

The defendant in addition to a general denial in his answer alleged in substance that plaintiff and J. W. Hope were partners in the real estate business operating under the firm or trade-name of "Golden Citrus Groves," at Mission, Tex. That they held themselves out as partners; and that the legal relationship of partners existed between them by virtue of their engagement in the joint enterprise of selling defendant a certain 4.86-acre tract of land located in Hidalgo county, Tex., which transaction induced defendant's execution of the notes sued on. That said land adjoins the intersection of two highways, and that it was represented to defendant by plaintiff H. E. Smith as offering a wonderful opportunity for the location of a country store, filling station, and tourist camp. That one C. J. Vollmer was the agent of said partnership. That Vollmer showed defendant the land and subsequently came to the defendant's home in Upshur county, Tex., and represented to defendant that said partnership for which he was agent would improve the land to the extent of constructing a concrete conduit in and to take the place of the open irrigation ditch or canal which runs diagonally across the land; and level the embankments of dirt deposited on the property in constructing the canal; and plant the land, except the part for filling station and store, in citrus trees of a certain grade and quality; and would convey to defendant good and merchantable title to the land in such improved condition for the sum of $5,500. That, relying upon the representations and promises of said partnership through its agent Vollmer, defendant was induced to enter into a parol agreement for the purchase and sale of said land, whereby he placed in the hands of C. J. Vollmer $1,500 in cash and the two $2,000 notes sued on, payable to the order of C. J. Vollmer, under the representations, promises, and agreement that the money and notes were to be held by Mr. Vollmer in trust and not delivered or transferred to Golden Citrus Groves until completion of the improvements and de-

livery of title by Golden Citrus Groves in accordance with said agreement. That in violation of the agreement the money and notes had been transferred and delivered to J. W. Hope and H. E. Smith, the partnership comprising the Golden Citrus Groves, and without any improvements having been made or title to the property delivered.

Defendant's answer charges fraud and deceit on the part of Smith, Hope, and Vollmer throughout the whole transaction, inducing execution and unlawful delivery of the notes; want of consideration in that they were executed in consideration of a parol promise to convey real estate, in violation of the statute of frauds; and failure of consideration. Defendant prays that plaintiff take nothing by reason of this suit, and that defendant recover on his cross-action for the $1,500.

By supplemental petition plaintiff denies that he is a partner of C. J. Vollmer or that C. J. Vollmer is his agent or has ever been authorized to act for him, and specially pleads:

"For further answer, if the same be necessary, the plaintiffs show the court that J. W. Hope of Mission, Texas, operates a real estate business under the name of 'Golden Citrus Groves,' and that the plaintiff, H. E. Smith, resides in Mission, Hidalgo County, Texas. The said J. W. Hope is the exclusive owner of the real estate business known as the 'Golden Citrus Groves,' but that from time to time the plaintiff, H. E. Smith, advances various and sundry sums of money to J. W. Hope to aid him in carrying on the real estate business, and receives, for the money so advanced, an interest in the transactions and deals made by the said J. W. Hope.

"During the months of July and August of 1931, the said J. W. Hope contracted with C. J. Vollmer to aid him in securing prospective purchasers for lands owned and held by J. W. Hope. This fact was well known to the defendant, J. W. Free, and the defendant made the trip to the Rio Grande Valley and saw the land described above. The defendant, J. W. Free, is charged with the knowledge of the limitations on the authority of the agent, C. J. Vollmer.

"After the notes sued on herein were executed and endorsed by the said C. J. Vollmer to J. W. Hope, the said J. W. Hope presented the same to this plaintiff, H. E. Smith, for the purpose of securing the money to promote the deal between J. W. Hope and J. W. Free. This plaintiff, when presented with the notes, was advised they were given by the said J. W. Free in payment of the lands above described. Plaintiff Smith was familiar with the land and knew defendant Free. Plaintiff Smith advanced said money, purchased said notes, and became owner in his own right, before maturity of said notes, without any knowledge on the part of this plaintiff that any of the alleged representations and promises complained of by the defendant had been made."

Plaintiff further specifically pleads that defendant is estopped from setting up the defenses claimed in his answer, for the reason that after maturity of the notes and on January 28, 1932, defendant in writing promised and agreed to pay the notes upon delivery to him of a deed together with a Stewart Guaranty Title policy covering title to the land. That at an expense of $120 plaintiff had procured said title policy, and that he had attached the same to a deed of conveyance and the notes to a draft which was presented through the Farmers' & Merchants' Bank of Gilmer for the amount of the notes and payment refused by defendant.

By supplemental answer defendant pleaded want of consideration in signing the letter mentioned in plaintiff's supplemental petition, agreeing to pay the notes, denied that plaintiff had expended the $120 for title policy, and tendered repayment if he had. Defendant claimed as the reason for having signed the letter that he did so to procure some written showing on the part of plaintiff and his alleged associate, J. W. Hope, for the $1,500 cash which he claims they had unlawfully procured from him in the manner above stated.

Trial was had to a jury. The court instructed the jury to return a verdict in favor of the plaintiff and against the defendant. From a judgment entered accordingly defendant has brought the case to this court by writ of error. We will continue to refer to the parties as they were aligned in the trial court.

The appeal presents for review three questions: (1) Was the defendant estopped as a matter of law from urging his defenses to the notes by having signed the letter of January 28, 1932, agreeing to pay the notes when sent to the bank at Gilmer with deed and title policy attached? (2) Was there evidence which should have been submitted to the jury with respect to the alleged partnership relations of plaintiff and J. W. Hope? (3) Was the court in error in instructing a verdict in favor of plaintiff on his plea of innocent purchaser of the notes?

■■ In respect to the first question presented, it appears that the letter of January 28, 1932, was signed by defendant at the instance and request of Mr. Smith. It appears undisputed that Mr. Vollmer was the agent of Golden Citrus Groves; that he contracted to sell defendant the land and procured possession of defendant's money and notes under the representation, promises and agreement as alleged by the defendant; and that in violation of the agreement and trust he made delivery of the money and notes to Mr. J. W. Hope, manager of Golden Citrus Groves, without any improvements having been made on the land, or delivery of title to defendant; and that the sales agreement was parol. It is testified by plaintiff that after signing of the letter by defendant, execution of the deed was completed by Mr. Hope, and that Mr. Hope procured the title policy and paid $120 as premium on the policy, insuring the title which Hope's deed conveyed to defendant; which title, it appears, had been rejected by defendant's attorney. These acts on the part of Mr. Hope were only partial performance of the sales agreement to furnish good title and to make the specified improvements on the land. The improvements have not been made. It does not appear that defendant received by virtue of the letter a benefit, if any, that he was not already entitled to under the sales agreement. And in so far as plaintiff Smith is concerned, it does not appear that he was injured or that his rights in the premises have been in any way impaired. In order for an estoppel to exist, it devolves upon the party seeking the advantage thereof to establish that he has been misled to his injury. Fitch v. Lomax (Tex. Com. App.) 16 S.W.(2d) 530, 66 A. L. R. 758; 17 Tex. Jur. § 15, p. 144. It appears that the first question should be answered in the negative.

■ Referring to the second question presented, attention is directed to the admissions of the plaintiff, H. E. Smith, in his answer in which he alleges that from time to time he advances various and sundry sums of money to Mr. Hope to aid him in carrying on the real estate business, and that he receives for the money so advanced an interest in the transactions and deals made by Mr. Hope; and that the notes sued on were presented to him by Mr. Hope for the purpose of procuring money "to promote the deal between J. W. Hope and J. W. Free." He alleges that he purchased the notes without any knowledge of the alleged representations made by C. J. Vollmer, but the pleading does not deny that he was to receive an interest in the deal when consummated as he had previously been receiving from time to time for his financial assistance in their promotion, and we do not find that this fact is denied in his testimony. Defendant testified that plaintiff had directed execution of the papers consummating a similar purchase of land by defendant from the agent Vollmer prior to that in question, of which he had paid off the purchase-money notes to plaintiff in person. Defendant further testified that plaintiff was present when Mr. Vollmer first spoke to him with respect to the purchase of the 4.86 acres of land in question, and that plaintiff had then represented to defendant the property as being a nice place for a store and filling station that could not be beat in the Valley. The contract of employment of the agent Vollmer by the Golden Citrus Groves was signed by J. W. Hope as "Manager." Plaintiff and J. W. Hope testified that they were not partners, but each admitted that they had written letters to C. J. Vollmer stating that they were partners in the Golden Citrus Groves real estate business, which letters were written shortly prior to the transaction in this case. As here presented, between a third party and an alleged partnership, we are of the opinion that the admissions of plaintiff in his answer, together with the other facts and circumstances in the record, are sufficient to warrant submission to the jury an issue on the question of whether or not a partnership relation existed between plaintiff and defendant J. W. Hope. In circumstances no more convincing than here presented, an affirmative finding of the jury in response to such an issue was sustained in Miller v. Laughlin (Tex. Civ. App.) 147 S. W. 711.

The third question presents the matter of whether or not the facts in regard to plaintiff's plea of innocent purchaser of the notes warranted the court in directing a verdict in favor of the plaintiff. Defendant's testimony supporting the terms and conditions of his alleged parol purchase and sales agreement with Vollmer, and of Vollmer's fraud and deceit inducing execution and unlawful delivery and transfer of the notes, is not disputed. It is admitted that Vollmer was the agent of Golden Citrus Groves, a real estate agency. J. W. Hope testified that he and his wife were the owners of Golden Citrus Groves and of the land agreed to be conveyed to J. W. Free. Plaintiff testified that he purchased the notes from J. W. Hope on the day and date of their execution, and paid their face value; and J. W. Hope informed him, at the time, of the agreement for which the notes were executed, except that part obligating

improvement of the land and the alleged fraud of Vollmer. He knew the agreement to convey the land was parol, and that the deed had not been executed at the time he purchased the notes. Mr. J. W. Hope as a witness for plaintiff on cross-examination testified that he (Hope) owned the notes on November 27, 1931. He further testified that on that date and on December 4, 1931, he wrote Mr. Free that he owned the notes and demanded of Mr. Free to pay them direct to him, and threatened that unless the notes were paid in accordance with his demand he would probably cancel the sales agreement and retain the $1,500 cash as liquidated damages. He further testified that he thought he transferred the notes to Mr. Smith before December 27, 1931, but that he would not say that he did do so because he did not remember when he transferred them.

■ Ordinarily the holder of a negotiable instrument is presumed to be an innocent purchaser for value and before maturity, and the burden is on the defendant to show that the holder acquired the instrument with knowledge of the facts interposed in defense of payment; but such is not the case where defendant has shown that it has been negotiated under "defective title" within the meaning of the provisions of the Negotiable Instruments Act, R. S. art. 5935, §§ 55 and 59:

"Sec. 59. Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course."

"Sec. 55. The title of a person who negotiates an instrument is defective within the meaning of this Act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

The provisions of the above sections are but declaratory of the common-law rule previously recognized in this state as announced in Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721, 722, 996: "It is the policy of the law merchant to promote the negotiability of commercial paper, and for this reason it is held that, as to defenses not involving fraud in the execution or uttering of such paper, the burden, as a rule, is upon the defendant to show that the plaintiff acquired the paper either without paying value, or that he had notice of the defense. But, for the suppression of fraud, it is held, in cases involving that element in the inception of the instrument, and sound policy dictates, that, in order to avoid the defense, the plaintiff, when the fraud is shown, should prove that he obtained the paper before maturity, in good faith, and for a valuable consideration." Industrial Acceptance Corporation v. Corey (Tex. Com. App.) 29 S.W.(2d) 978, 979: "The reason for this rule is that fraud in the inception of the instrument raises a presumption that the party to the fraud, who formerly held the paper and who is precluded from recovery thereon himself, has placed it in the hands of another to sue on for him."

■ So, in the present case, fraud having been shown in the execution and unauthorized delivery of the notes, the burden was then cast upon plaintiff to show that he acquired the notes (1) before maturity, (2) in good faith, and (3) for valuable consideration. To discharge this burden of proof plaintiff introduced in evidence the testimony of himself and J. W. Hope, who was also an interested witness. In the circumstances a directed verdict in favor of plaintiff was error: First, if their testimony had been in accord and asserted that plaintiff was a holder in due course of trade, plaintiff and J. W. Hope both being interested witnesses, the jury was not bound as a matter of law to have accepted their testimony, and in determining the issue the jury may have rejected it. Caldwell v. McGarvey (Tex. Civ. App.) 285 S. W. 859; Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447. Second, to show that he acquired the instrument "in good faith," it is held that the plaintiff must have paid value before maturity in the usual course of business and that "the circumstances attending the acquisition of the paper cast no suspicion upon the fairness of his intent." Shaw v. San Jacinto Realty Co. (Tex. Civ. App.) 16 S.W.(2d) 341, 343. Hence, J. W. Hope's testimony as to the dates when he transferred the notes to plaintiff, as well as the attending circumstances of the transaction under which the plaintiff acquired the notes from Mr. Hope, presented matters for the jury. Third, plaintiff's knowledge, at the time he acquired the notes, that they were executed upon an unenforceable parol promise to convey real estate, charged plaintiff with their want of consideration. Weatherley v. Choate, 21 Tex. 272; Davis v. Dilbeck (Tex. Civ. App.) 232 S. W. 927.

The judgment of the trial court will be reversed, and the cause remanded.