**MOORE v. CONWAY et al.**

No. 1908.

Court of Civil Appeals of Texas. Waco.

June 3, 1937.

On Motion for Rehearing July 15, 1937.

Rehearing Denied Sept. 23, 1937.

Cureton, Cureton & Cureton, of Meridian, and Bryan & Maxwell, of Waco, for appellant.

Weatherby, Rogers & Scott, of Waco, for appellees.

GEORGE, Commissioner.

Appellee Tom Conway, trustee in bankruptcy of Bosque Mill & Elevator Company, a corporation, filed suit against appellant, C. M. Moore, to recover damages for alleged conversion of 5,000 bushels of wheat of the market value of $3,750. The trial was before the court and jury, and, on answers of the latter to special issues, judgment was rendered in favor of appellee for the market value of 1,800 bushels of wheat.

Appellant says that the finding of the jury that he, at the time of taking charge of the Bosque Mill & Elevator Company's mill, took over and used 1,800 bushels of wheat, is not only not supported by the evidence, but the finding is so clearly against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.' The burden was on appellee to establish the number of bushels of wheat appropriated by appellant. R. O. Bass was president and his wife, Travis Bass, was secretary-treasurer of Bosque Mill & Elevator Company. Appellant, during the years 1931, 1932, and 1933, stored approximately 35,000 bushels of oats in the bins of the company and permitted Bass to sell the oats for him from time to time. He was the holder of a deed of trust lien on the company's buildings and real property to secure the payment of an indebtedness in his favor in the approximate amount of $7,500. W. B. Oswald and other farmers of the Clifton community made a practice of storing their wheat in the company's bins and elevators. Clement Grain Company shipped to Bosque Mill & Elevator Company, on February 5, 1934, 1,400 bushels of hard wheat to be used in blending with soft wheat grown in that section. Hard wheat was not grown in that section but had to be shipped in. R. O. Bass became seriously ill in the early spring of 1934 and his brother, Kendall Bass, took charge of the mill and operated it two or three days a week for a time and used available wheat on hand in the manufacture of flour and other wheat products. It appears to be conceded that the wheat taken by appellant was hard wheat. Appellant admits in his answer and testimony that he took possession of approximately 1,018

bushels of hard wheat. Appellee relies on the hereinafter set out testimony of W. B. Oswald and Wallace Balor to establish the fact that appellant took 1,800 instead of 1,018 bushels of wheat. W. B. Oswald, witness for appellee, testified that appellant took charge of the mill on the 15th day of April, 1934; that he had a conversation with appellant on the 15th day of April 1934, in which he told appellant about selling Bass his wheat on credit; that appellant said to him: "Leave this to me. I have had lots of experience and will collect this money. I have a deed of trust against the plant down there—the buildings and grounds. I am going down there in a few days"; that he, shortly after the conversation with appellant, went down and checked what was on hand at the mill and found 1,800 bushels of wheat, 1,400 in the elevators and 400 in the mill; that Kendall Bass was there and paid him $150 on the wheat he had sold R. O. Bass, but that appellant was not down there at the mill; that he did not know whether Kendall Bass or appellant was in charge of the mill on April 15, 1934. Wallace Balor, witness for appellant, on cross-examination, testified: "I don't know whether all that 1800 bushels, except 100 bushels of it, was ground into flour after Mr. Bass (R. O.) left. I said so in my statement and I was telling the truth as near as I could." Appellant testified that he went into possession of the mill on May 3, 1934, under a written lease, which lease was introduced in evidence, that he would not take possession of the mill until an audit had been made; that an inventory of the wheat on hand was taken by A. G. Amundson, employee of Bosque Mill & Elevator Company, and L. E. Tennison; that he took into his possession and ground into flour approximately 1,000 bushels of hard wheat under the belief that such wheat belonged to him. The testimony of the appellant is corroborated by the positive and unimpeached and uncontradicted testimony of Amundson and Tennison that they made an inventory and found only 1,018 bushels of hard wheat on hand at the mill at the time appellant took possession of same and 165 bushels of soft wheat, 100 bushels of which belonged to Mrs. Bass and 65 bushels to Mr. Parks. The records and the testimony of Amundson indicate that the mill bought only one carload of hard wheat during the spring of 1934 and that was the 1,400 bushel carload shipped by Clement Grain Company. Amundson acted for the company in taking the inventory and appellant offered in evidence written authority of L. E. Tennison to act for the company, which was excluded by the trial court.

The evidence is not in fact in conflict as to the number of bushels of wheat on hand at the time appellant took charge of the mill and appropriated same, except that belonging to Mrs. Bass and Mr. Parks, to his use. Appellee's witnesses testify as to number of bushels on hand at a time other than that testified to by appellant's witnesses. Appellee's witnesses do not attempt to testify as to number of bushels on hand about May 3, 1934, or as to any other facts that would tend to show with reasonable certainty the number of bushels on hand at such time. The testimony of Mr. Oswald does not inform us as to whether the wheat he found down at the mill at the time Kendall Bass was present was on hand at the time appellant took possession of the mill, nor does his testimony inform us as to whether any part of the wheat he found was ground during the time Kendall Bass was in possession of the mill prior to the time appellant took charge. His testimony that appellant took charge on April 15, 1934, is the expression of a mere opinion and carries no probative force whatever, as is manifest by his other testimony to the effect that he did not know whether Kendall Bass or appellant was in charge of the mill on April 15, 1934, and that he had a conversation with appellant on April 15, 1934, in which appellant told him he was going down there in a few days, and that he went down there soon after the 15th of April and found Kendall Bass present, and that Kendall Bass, on such occasion, paid him $150 on debt due him by mill. He relates no facts on which such opinion could be reasonably based. The facts related by him tend to contradict the opinion given and destroy its probative force, if any it ever had. The testimony of the witness Wallace Balor is that he did not know whether all that 1,800 bushels, except 100 bushels, had been ground into flour after Mr. R. O. Bass became unable to visit the mill, but that he had made a statement to that effect at a time when he was trying to tell the truth as near as he could. This testimony gives no light whatever as to the number of bushels on hand at the mill at the time appellant took charge. If it be admitted that the 1,800 bushels were ground after R. O. Bass became seriously ill, this witness' testimony would not show whether part or all of it was on hand when appellant

took charge. This witness testified to the fact that Kendall Bass was in charge of the plant for a period of time after R. O. Bass became ill and that the mill was operated two or three days a week during that time in grinding wheat into flour and other by-products. The testimony is manifestly insufficient to support the jury's finding that appellant took 1,800 bushels of wheat instead of 1,018 bushels, as admitted by him in his pleadings and testimony. Perkins v. Lightfoot (Tex.Civ.App.) 10 S.W.(2d) 1030.

We have carefully examined the other assignments of error presented herein and we are not passing on same inasmuch as it is not likely that such matters will arise in the same manner on another trial of this cause.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

Opinion adopted by the court.

**On Appellees' Motion for Rehearing.**

GEORGE, Justice.

Appellant insists that the findings of the jury, (1) that there was no agreement between appellant and R. O. Bass, acting for Bosque Mill & Elevator Company, by which the purchase of the Clement Grain Company's car of wheat was to be financed out of appellant's oats, and (2) that there was no agreement between appellant and R. O. Bass, acting for Bosque Mill & Elevator Company, that such car of wheat when purchased was to be appellant's property with the privilege of the mill company taking and paying for portions of the wheat as it used such portions thereof in grinding, are not only not supported by any evidence, but are so clearly against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. The contention that this wheat was to be appellant's property, when purchased, is supported only by appellant's uncorroborated testimony, and the contention that the purchase of same was to be financed out of appellant's oats may be, in addition thereto, supported also to some extent by the circumstances of the failing condition of the mill company and the fact that the wheat was partly paid for with oats. The relevant and pertinent portions of appellant's testimony are: "Bass was in need of hard wheat and he didn't have the cash to buy it with. He really wanted to borrow the money and I told him 'No'. Bass wasn't able to buy hard wheat

in car load lots. I told Bass I would furnish him oats enough to pay for his wheat, provided he would pay me when he ground this wheat, because we were getting a little extra price for the oats by making that kind of a trade with him in oats. I told him I would furnish the oats, enough to buy his hard wheat with, provided it would be my wheat until it was ground up and he paid me for it. He was to pay me as he ground it. I had about ten or twelve thousand bushels of oats there at that time. Bass got a car load of hard wheat from Clement Grain Company following that. Bass and I had a settlement afterwards and the amount of oats I had furnished him on this car of hard wheat amounted to something like 3200 bushels. I do not know to whom he sold all of the oats. He sold most of them to Clement's. I saw two truck loads shipped to Clement's. A truck load holds about 300 bushels. Bass was to pay for the hard wheat as he used it. He made three payments on it, aggregating $656.35. He wanted to borrow the money. I says 'No'. 'You have got too much money in stuff there now, if you can trade Clement's oats for wheat, you can go ahead and do it.' That was all that was said to him. I did not furnish Mr. Bass with anything besides oats to buy that wheat with." The Clement Grain Company's records show that the car of hard wheat was billed to Bosque Mill & Elevator Company on February 5, 1934; that same contained 1,400 bushels of wheat; that its price was $.97 per bushel; that the purchase price for the car of wheat was $1,358; that a credit of $845.10 was allowed for oats delivered to Clement Grain Company by Bosque Mill & Elevator Company; that draft for balance of purchase price, in the sum of $512.90, was drawn on and paid by Bosque Mill & Elevator Company. The wheat was purchased in the name of Bosque Mill & Elevator Company, which company paid part of the purchase price in cash. The wheat was delivered to it and stored by it in its elevators. Part of the wheat was mixed with other wheat belonging to it and manufactured into flour and such manufactured products sold and the proceeds thereof deposited to its credit. W. B. Oswald testified that appellant told him on April 15, 1934, that the only claim he had against Bosque Mill & Elevator Company was a deed of trust against the buildings and grounds. There was testimony to the effect that appellant had told the witness Wallace Balor to keep quiet and not tell anybody anything.

It is true, no witness was produced who did or could testify that the conversations detailed by appellant did not take place as related by him, but the record indicates that appellant's manner of testifying was not convincing; that it was reluctant; that the parties were antagonistic; that some of his material statements were indirectly contradicted by circumstances; that his statements were neither clear nor consistent; that there were attendant circumstances which cast doubt on the verity and accuracy of his testimony. For instance: (a) He did not mention his ownership of wheat when talking to Oswald; (b) he says he was to be paid for wheat as used by mill company at rate of $.97 per bushel and that he was paid for wheat used in the sum of $656.35, yet his testimony and that of his witnesses show that there had been used only 382 bushels of this wheat at the time he took possession of it; (c) on direct examination he testified: "I told Bass I would furnish the oats, provided the wheat would be mine until it was ground up and he paid me for it." And on cross-examination he said: "He (Bass) wanted to borrow the money. I says 'No'. * * * if you can trade Clement's oats for wheat, you can go ahead and do it. That was all that was said to him (Bass)."

Appellant is a vitally interested party. His credibility and the weight to be given to his testimony were for the jury to determine. They were not bound to accept as true what appellant said, and, if they disbelieved him or doubted the accuracy of his statements, then they had the right to disregard all, or any portion, of his testimony and look to the other facts and circumstances in the case in arriving at their decision, and their finding is conclusive, because, if his testimony is ignored, then there is no evidence in this record tending in anywise to show ownership of wheat in appellant. Pope v. Beauchamp, 110 Tex. 271, 219 S.W. 447; Houston E. & W. T. Ry. Co. v. Runnels, 92 Tex. 305, 47 S.W. 971; Cheatham v. Riddle, 12 Tex. 112; Coats v. Elliott, 23 Tex. 606; Sigmond Rothchild Co. v. Moore (Tex.Com.App.) 37 S.W.(2d) 121; Thraves v. Hooser (Tex.Com.App.) 44 S.W.(2d) 916; American Surety Co. v. Whitehead (Tex.Com.App.) 45 S.W.(2d) 958; Mills v. Mills (Tex.Com.App.) 228 S.W. 919; Carwile v. Roberts (Tex.Civ.App.) 11 S.W.(2d) 549; Krueger v. Bankers Lloyds (Tex.Civ. App.) 45 S.W.(2d) 363; Clem v. Fulgham (Tex.Com.App.) 14 S.W.(2d) 812; Galveston H. & S. A. Ry. Co. v. Murray (Tex.Civ. App.) 99 S.W. 144; First National Bank v. Howard (Tex.Civ.App.) 174 S.W. 719; International & G. N. Ry. Co. v. Johnson, 23 Tex.Civ.App. 160, 55 S.W. 772; Stone v. City of Wylie (Tex.Com.App.) 34 S.W.(2d) 842; Sovereign Camp v. Jackson (Tex.Civ. App.) 138 S.W. 1137; Gonzales v. Adoue (Tex.Civ.App.) 56 S.W. 543; Jones v. Jones (Tex.Civ.App.) 146 S.W. 265; Williams v. Burke (Tex.Civ.App.) 108 S.W. 160; Heisig Rice Co. v. Fairbanks, Morse Co., 45 Tex.Civ.App. 383, 100 S.W. 959; Missouri K. & T. Ry. Co. v. Harris, 45 Tex. Civ.App. 542, 101 S.W. 506; Groves v. Whittenberg (Tex.Civ.App.) 165 S.W. 889; Goodrich v. Pandem Oil Corp. (Tex.Com. App.) 48 S.W.(2d) 606; North v. North (Tex.Civ.App.) 2 S.W.(2d) 481; Smalley v. Octagon Oil Co. (Tex.Civ.App.) 82 S.W. (2d) 1049; Free v. Smith (Tex.Civ.App.) 80 S.W.(2d) 419; Tanner v. Drake, 124 Tex. 395, 78 S.W.(2d) 162; Aetna Casualty & Surety Co. v. Tobolowsky (Tex.Civ.App.) 73 S.W.(2d) 556; Shepherd v. Woodson Lumber Co. (Tex.Civ.App.) 63 S.W.(2d) 581; Transcontinental Ins. Co. v. Frazier (Tex.Civ.App.) 60 S.W.(2d) 268; Chicago Fire & Marine Ins. Co. v. Harkness (Tex. Civ.App.) 58 S.W.(2d) 171; Fagg v. Benners (Tex.Civ.App.) 47 S.W.(2d) 872; Hobart National Bank v. Fordtran (Tex. Civ.App.) 122 S.W. 413; Franklin Life Insurance Co. v. Villeneuve, 29 Tex.Civ.App. 128, 68 S.W. 203; Stitzle v. Evans, 74 Tex. 596, 12 S.W. 326; Pridgen v. Walker, 40 Tex. 135, 136; Crosby v. First Presbyterian Church, 45 Tex.Civ.App. 111, 99 S.W. 584; Keton v. Silbert (Tex.Civ.App.) 250 S.W. 316; First National Bank v. McWhorter (Tex.Civ.App.) 179 S.W. 1147; Rayner v. Posey (Tex.Civ.App.) 173 S.W. 246; Brannan v. First State Bank (Tex.Civ.App.) 211 S.W. 945; Wichita Falls Traction Co. v. Berry (Tex.Civ.App.) 187 S.W. 415; Guaranty State Bank v. Roark (Tex.Civ.App.) 243 S.W. 591; Lasater v. Jamison (Tex. Civ.App.) 203 S.W. 1151; Friemel v. Coker (Tex.Civ.App.) 218 S.W. 1105; Dashiell v. Johnson, 99 Tex. 546, 91 S.W. 1085; Farm & Home Savings & Loan Ass'n v. Muhl (Tex.Civ.App.) 37 S.W.(2d) 316; Himes v. Himes (Tex.Civ.App.) 55 S.W.(2d) 181; Boerner v. Cicero Smith Lumber Co. (Tex. Civ.App.) 293 S.W. 632; Stefka v. Lawrence (Tex.Civ.App.) 288 S.W. 1092; Rodriguez v. Saegert (Tex.Civ.App.) 74 S.W. (2d) 171; Commercial State Bank v. Blackwell (Tex.Civ.App.) 61 S.W.(2d) 563; Moore v. Moore (Tex.Civ.App.) 259 S.W.

322; Atchison T. & S. F. Ry. Co. v. Lucas (Tex.Civ.App.) 148 S.W. 1149; Houston National Bank v. Adams (Tex.Civ.App.) 295 S.W. 198; Brown v. Griffin, 71 Tex. 654, 9 S.W. 546; Turner v. Grobe, 24 Tex. Civ.App. 554, 59 S.W. 583; McCormick v. Kampmann (Tex.Civ.App.) 109 S.W. 492; Morgan v. Bement, 24 Tex.Civ.App. 564, 59 S.W. 907; Burleson v. Tinnin (Tex.Civ. App.) 100 S.W. 350; Heierman v. Robinson, 26 Tex.Civ.App. 491, 63 S.W. 657, 658; Wyatt v. Moore (Tex.Civ.App.) 152 S.W. 1133; Thomasson v. Davis (Tex.Civ.App.) 74 S.W.(2d) 557; Dubinski Electric Works v. Lang Electric Co. (Tex.Civ.App.) 111 S. W. 169; Ft. Worth & D. C. Ry. Co. v. Decatur Cotton Seed Co. (Tex.Civ.App.) 193 S. W. 392; Queen v. Turman (Tex.Civ.App.) 241 S.W. 786; Dendinger v. Martin (Tex. Civ.App.) 221 S.W. 1095; Jarecki Mfg. Co. v. Hinds (Tex.Civ.App.) 295 S.W. 274; Daugherty v. Wiles (Tex.Com.App.) 207 S.W. 900; Walker v. Dawley (Tex.Civ. App.) 4 S.W.(2d) 159; Wachholder v. Paull (Tex.Civ.App.) 267 S.W. 325; Chicago R. I. & G. Ry. Co. v. Hammond (Tex.Civ. App.) 286 S.W. 483.

Appellant insists that the trial court erred in refusing to grant his motion for new trial, for the reason that there is not sufficient evidence to support the judgment because of the failure of appellee to prove that appellant took possession of the wheat without the permission of the mill company. Appellant testified that he, on or about May 2, 1934, took 1,018 bushels of hard wheat in the elevators of Bosque Mill & Elevator Company under the belief that same belonged to him, and immediately thereafter mixed it with soft wheat purchased by him from local farmers and manufactured the mixed wheats into flour and other wheat products and sold same and appropriated the proceeds to his use. He is bound by this testimony, Southern Surety Company v. Inabnit (Tex.Civ.App.) 1 S.W.(2d) 412, and, if he was not the owner of this wheat, then his appropriation thereof was wrongful ab initio and conversion thereof was complete when he took possession and asserted ownership of and exercised dominion over it. The jury found that he was not the owner of this wheat, and such finding has substantial support in the evidence. The fact that he, in good faith, took and appropriated the wheat, under the belief that it was his wheat, does not relieve him of liability for its then market value. His testimony shows a taking without permission. Crawford v.

Thomason, 53 Tex.Civ.App. 561, 117 S.W. 181; Lawson v. Townsend (Tex.Civ.App.) 25 S.W.(2d) 170; Stidham v. Lewis (Tex. Civ.App.) 23 S.W.(2d) 851; Payne v. Lindsley, 59 Tex.Civ.App. 545, 126 S.W. 329; Williams v. Deen, 5 Tex.Civ.App. 575, 24 S.W. 536; Henderson v. Beggs (Tex.Civ. App.) 207 S.W. 565; Neyland v. Brammer (Tex.Civ.App.) 73 S.W.(2d) 884; Runnels v. La Fitte (Tex.Civ.App.) 61 S.W.(2d) 585; Standard Finance Corp. v. Moore (Tex.Civ.App.) 69 S.W.(2d) 458; Cotten v. Heimbecher (Tex.Civ.App.) 48 S.W.(2d) 402; Forrest v. Burns (Tex.Civ.App.) 57 S.W.(2d) 1111; Pittman v. Ft. Worth Warehouse & Storage Co. (Tex.Civ.App.) 258 S.W. 1105.

Appellant testified that R. O. Bass and his wife knew that he (appellant) was getting the hard wheat purchased from Clement Grain Company. The trial court, on motion of appellee, struck this testimony. This ruling is challenged. The proferred testimony was relevant on the issues of ownership and conversion of the 1,018 bushels of hard wheat and was therefore admissible, yet the court permitted appellant to testify fully as to his conversations and transactions with R. O. Bass and as to the facts and circumstances with reference to the purchase and acquisition of and the means and manner of payment for the hard wheat and as to the circumstances surrounding his taking of it and his reasons therefor. He did not testify or offer to testify that he took the wheat with the permission or consent of either Mr. or Mrs. Bass, and for such reason his proferred testimony that they (Mr. and Mrs. Bass, president and treasurer, respectively) knew that he was getting the wheat has little, if any, probative force on the question of conversion; and it does not appear from an examination of the entire record that the exclusion of this testimony (1) could have or did affect the finding of the jury; (2) cause rendition of improper judgment; (3) probably prevented proper presentation of appellant's case; or (4) was prejudicial. Schroeder v. Rosenbaum (Tex.Civ.App.) 21 S.W.(2d) 694; Plunkett v. Simmons (Tex.Civ.App.) 63 S.W.(2d) 313; Luby v. Hoffman (Tex.Civ.App.) 54 S.W.(2d) 180; Doss v. Southwestern Transportation Co. (Tex.Civ.App.) 89 S.W.(2d) 1092; Stuart Motor Co. v. Burroughs Adding Machine Co. (Tex.Civ.App.) 47 S.W.(2d) 637; Bute v. Duson (Tex.Civ.App.) 95 S.W.(2d) 493; Carlton v. Adams (Tex.Civ.App.) 54 S.W.

(2d) 1073; Rose v. O'Keefe (Tex.Com. App.) 39 S.W.(2d) 877; Evans v. Galbraith-Foxworth Lumber Co. (Tex.Civ. App.) 31 S.W.(2d) 496; Benton v. Benton (Tex.Civ.App.) 45 S.W.(2d) 260; Sloan v. Sloan (Tex.Civ.App.) 32 S.W.(2d) 513.

The other assignments presented have been carefully examined and found to be without merit.

Appellee, having filed a remittitur of $586.50, the excess ascertained to exist in the verdict of the jury and judgment of the court below, the judgment therefore is reformed by reducing the amount of recovery by $586.50, and, as reformed, judgment is here rendered in favor of appellee against appellant for the sum of $763.50, with 6 per cent. interest from the 2d day of May, 1934, but judgment is here rendered in favor of appellant against appellee for all costs incurred in this court and in the appeal of this cause. A. Harris & Co. v. Caldwell (Tex. Civ.App.) 276 S.W. 298.

Appellees' motion for rehearing is granted, and the judgment heretofore rendered, reversing and remanding this cause, is set aside, and the judgment of the trial court, as herein reformed, is affirmed.